**S. H. HAILE, Appellant,**

v.

**AMARILLO NATIONAL BANK, Appellee.**

No. 6526.

Court of Civil Appeals of Texas. Amarillo.

Oct. 17, 1955.

See also, 283 S.W.2d 279.

Simpson, Clayton & Fullingim, Amarillo, for appellant.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, for appellee.

PITTS, Chief Justice.

This is one of two companion cases between the same parties, the other one following this one serially. By stipulation the two cases were heard together in the trial court upon one statement of facts. They were jointly presented here upon the same statement of facts but separate appeals were perfected upon different transcripts and separate briefs were filed. Both suits were filed by appellee, Amarillo National Bank, against appellant, S. H. Haile, seeking recovery on separate promissory notes the payment of each of which was allegedly assumed by appellant, S. H. Haile.

The note involved in this action, shown in the records as Plaintiff's Exhibit No. 1, was executed by M. R. Jones and wife, La Verne Jones, on September 14, 1953, payable to Seale Amerson Lumber and Building Company for the principal sum of $2,723.88, payable in 36 consecutive monthly installments of $75.67 each, beginning on October 18, 1953, containing an acceleration clause maturing the entire amount upon default in payments, if any, and likewise containing the usual attorney's fee obligation in case of default as well as the usual interest clause therein expressed. The said note was secured by an inferior lien to other existing liens upon a certain tourist court known as "Wagon Wheel Courts" located in Amarillo. The said note was thereafter transferred without recourse to appellee by Seale Amerson Lumber and Building Company.

The other promissory note sued on in the other suit heretofore mentioned and likewise pending here on appeal was also transferred to appellee herein without recourse and is also involved in this case and is shown in the record to be Plaintiff's Exhibit No. 2. It was executed on March 17, 1953, for the principal sum of $3,449.40,

payable in 35 consecutive monthly installments of $95.82 each, beginning on April 17, 1953, and was likewise secured by a mechanic's lien on the Wagon Wheel Courts, which lien was inferior to some other outstanding liens but was superior to the lien securing the note first herein mentioned which is the subject matter on this appeal.

On or about September 18, 1953, M. R. Jones and wife sold the Wagon Wheel Courts, together with the furniture therein, to appellant, S. H. Haile, at a contract purchase price listed as $90,690, which included a cash payment of $500 together with a series of notes executed. According to the contract between the parties and the deed of conveyance the said property was purchased by appellant, S. H. Haile, subject to the various indebtednesses secured by liens therein listed amounting to approximately $85,600, which included both notes and liens herein mentioned that compose the subject matter for the said two cases here pending. At the time of the said sale both of the notes herein mentioned had been previously transferred and were then owned by appellee herein. The last note mentioned, which was the first one executed, provided that in case of a sale of the said property it must be paid in full at the time of the sale thereof. That note had two installments past due and the other note here sued on had the first installment past due when on October 20, 1953, appellant went to the bank to see appellee's agents about an adjustment of some nature. Appellee's agents told appellant that they would take steps to accelerate the maturity and collect both notes unless he secured their payments better. On the said date appellant agreed to make the payments in default, to sign both of the said notes and make the future installment payments thereon according to the terms thereof himself. Appellant then signed both notes and thereafter made the back payments, together with three additional installment payments on each note to appellee but he defaulted thereafter, which resulted in the filing of both lawsuits previously mentioned seeking recovery on the balance due on the notes.

Both cases were heard jointly by the trial court without a jury and judgment was rendered in both cases for appellee and against appellant, who perfected an appeal in each case.

Appellant contends here that he did not assume payment of the notes either by purchasing the Wagon Wheel Courts or by thereafter signing the said notes. But in case he did assume payment of the notes by signing them, he cannot be held liable therefor because the transaction was not supported by a consideration. Appellee concedes that appellant did not assume payment of the notes by merely purchasing the Wagon Wheel Courts subject to the debts secured by liens against it, but they seriously contend that appellant did personally assume the payments of the balance due on the notes according to the terms thereof by agreement between the parties on October 20, 1953, and that his signature thereon consummated the agreements, which agreements they further contend are supported by a valuable consideration in each case.

Appellant requested the trial court to make and file its findings of fact and conclusions of law, which it did. Among them the trial court found and concluded in effect that appellant did assume payment of and became personally liable for the balance due on each of the said notes and extended them for payments according to the terms thereof by reason of an agreement between appellant and appellee's agents entered into on October 20, 1953, which agreement was consummated by appellant signing the said notes and that the said transactions were each supported by a valid consideration.

In our opinion all parties are bound by the trial court's material findings herein mentioned because they are supported by competent evidence of probative force. The record reveals that appellant went to the bank soon after he purchased the Wagon Wheel Courts and first talked to

R. L. Moore, Vice-President of the bank, seeking information about the indebtedness against the Courts he had purchased and particularly about the two notes here in controversy. Moore took appellant and introduced him to Arvel Boyd, assistant cashier of the bank, and asked Boyd to handle the matters for appellant. However, Moore testified in effect that he remained with Boyd and appellant for a part of the conversation; that he and Boyd there showed appellant the unpaid balance of the notes and that a part of the payments were past due; that they told appellant that the notes would necessarily be matured unless he made the back payments and assumed further payments shown therein and appellant assured them that he would care for the past due payments and assume and be responsible for further payments on the notes if the bank would not then foreclose on the notes.

Boyd testified that they showed appellant that default existed on both notes here involved and he told appellant that the obligation would be matured on both notes unless appellant made the back payments thereon and assumed the future payments therein according to the terms of the notes respectively, which appellant, on October 20, 1953, agreed to do and evidenced his good faith so to do by signing the said notes himself, making the back payments and continuing the payments of future installments until three such were paid before he defaulted, which resulted in filing these suits. The most of the testimony of Moore and Boyd is uncontroverted and in fact admitted by appellant, except that he denies that he assumed payment of the notes. Although the question of assuming payment of the notes is controverted, we must accept the findings of the trial court on that issue under the record presented. Before the assumption of the notes by appellant, Boyd also told him that the original borrowers who first signed the two notes were out of the State of Texas, making it almost impossible or at least difficult to get service on them as nonresidents, which was another reason for maturing the notes unless appellant would assume payment of them. The record reveals that the original signers of the note involved in this case were first made parties to this action but were thereafter dismissed because satisfactory nonresident service could not be had upon them.

■ It is conceded that, although appellant was not personally liable on the notes here sued on by merely purchasing the Wagon Wheel Courts subject to the indebtedness against such, appellant's said property was subject to the liens securing the notes and the same would have been lost to him in the event of a foreclosure by appellee. By reason of appellant's assumption of the payments on the notes and agreement to be personally liable thereon, appellee agreed to forego its rights to accelerate and mature the payments thereon. As a result, appellant promised to do something he was not previously required to do by reason of which he then benefited and avoided suffering a legal detriment, while appellee agreed to forbear acceleration of the maturity of the notes, thus suffering a legal detriment, particularly since other lienholders thereafter foreclosed their liens and sold the property in question to satisfy their claims in the meantime, thus extinguishing appellee's liens. The surrender by appellee of its rights to foreclose its liens on the property to the benefit of appellant by reason thereof constitutes a valuable consideration in support of the agreement between the parties. Continental State Bank of Rising Star v. Seibold, Tex.Civ.App., 62 S.W.2d 621 (writ refused); 10 Tex.Jur. 123–124, Sec. 71. The rule there announced has support also in the cases of Collier v. Price, Tex.Civ.App., 113 S.W.2d 304 (writ dismissed), and Peterson v. Kerbey, Tex. Civ.App., 151 S.W. 321 (writ refused).

For the reasons stated appellant's points of error are all overruled and the judgment of the trial court is affirmed.